

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5486
Re: Validity and interpretation
of House Bill 379, Acts of
the Regular Session of the
48th Legislature.

In your opinion request of may 10, 1943, you state:

"I will thank you to advise this Department whether or not House Bill No. 379, Acts of the Regular Session of the Forty-eight Legislature, is a valid law and if so whether or not it affects Article 7076, R. C. S. of Texas, 1925, as recited therein, and whether or not it amends Article 107a of the Penal Code."

House Bill 379 contains the following caption:

## AN ACT

to amend Article 7076, Revised Civil Statutes, Texas, 1925, Title: Taxes and Taxation, as amended by Section 9 of Section 2 (b) of Senate Bill No. 412, Chapter 192, Acts 1933, Forty-third Legislature, Regular Session, as amended by Section 5 of House Bill No. 990, Chapter 13, Acts, 1939, Forty-sixth Legislature,

Regular Session, providing for certain reports to be made by the executors and administrators of estates of decedents, and providing that the clerks of Probate and County Courts shall furnish certain information relating to estates of decedents to the Comptroller of Public Accounts, for the purpose of enabling him to determine the inheritance tax liability of such an estate; and declaring an emergency._____

In Section 1 of House Bill 379 the description contained in the caption is repeated as follows:

"Section 1. That Article 7076, Revised Civil Statutes, Texas, 1925, Title: Taxes and Taxation, as amended by Section 9 of Section 2(b) of Senate Bill No. 412, Chapter 192, Acts, 1933, Forty-third Legislature, Regular Session, as amended by Section 5, House Bill No. 990, Chapter 13, Acts 1939, Forty-sixth Legislature, Regular Session, be and the same is hereby amended to read as follows:

"'Article 7076. . .'".

To facilitate an understanding of the problems involved in your request we summarize below the legislative history of the various acts pertinent to your inquiry together with a sketch of the contents thereof:

(a) Article 7076, R.C.S.: As enacted in the revision of 1925 this Article contained merely a short provision conferring authority to institute suits for penalties arising out of violations of the tax statutes upon the Attorney General and fixing the venue of such suits.

(1) In 1933 this article was amended by Section 1 of Senate Bill 412, Chapter 192, Acts of the Regular Session of the Forty-third Legislature, to include detailed provisions establishing a mechanism for the collection of delinquent State taxes by the State Tax Board.

427

(2) Prior to the passage of House Bill No. 379, Article 7076 stood as indicated above.

(b) The 1933 Act: Senate Bill 412, Chapter 192, Acts of the Regular Session of the Forty-third Legislature accomplished, inter alia, two things:

(1) Section 1 thereof amended Article 7076 as indicated above.

(2) Section 9 of Section 2(b) thereof contained a new provision requiring county clerks to submit certain reports in inheritance tax matters to the Comptroller of Public Accounts and fixed a penalty for refusal to comply with this requirement. This Section has been listed by the publishers as Article 107a of Vernon's Annotated Penal Code.

(c) The 1939 Act: Section 5 of House Bill 990, Chapter 13, Acts of the Regular Session of the Forty-sixth Legislature amended Section 9 of Section 2 (b) of the 1933 Act by making slight alterations in the wording thereof and by providing that the cost of the inheritance tax reports to be submitted by county clerks be taxed as part of the costs of the probate court. This Act in no way referred to or affected Article 7076. After this amendment the law relative to inheritance tax reports remained static until the passage of House Bill 379.

(d) The 1943 Act: House Bill 379, Acts of the Regular Session of the Forty-eighth Legislature, the Act here in question, contains in its caption and in its first section the references quoted above, but the body of the Act affects the submission of inheritance tax reports by requiring that executors and administrators submit certain

Honorable George H. Sheppard, Page 4.

reports to the county clerks and by reenacting
in a slightly altered form the provisions of the
1933 Act and its 1939 amendment relative to the
forwarding of reports to the Comptroller. This
Act in no way refers to or involves collections
of delinquent taxes or penalties of the type
covered by Article 7076.

Thus it will be seen that House Bill 379 purports
to amend Article 7076 as amended by Section 9 of Sub-sec-
tion 2(b) of a 1933 Act and as again amended by a 1939 Act,
whereas in fact Article 7076 was amended by Section 1 of
the 1933 Act and was never amended in 1939. Moreover, al-
though the subject dealt with in House Bill 379 is entirely
foreign to the matters heretofore treated in Article 7076,
the subject of this Bill is identical with that contained
in Section 9 of Sub-section 2(b) of the 1933 Act and in the
cited 1939 Act. In this anomalous situation you ask that
we ascertain the validity and effect of House Bill 379.

Although we have found no decision of a Texas
court covering a situation of this kind, we feel that the
principles heretofore announced by our courts, when coupled
with decisions from other jurisdictions, afford a solution
to this problem.

Section 35 of Article III of our Constitution
provides:

"No bill, (except general appropriation bills,
which may embrace the various subjects and accounts,
for and on account of which moneys are appropriated)
shall contain more than one subject which shall be
expressed in its title. But if any subject shall be
embraced in an act, which shall not be expressed in
the title, such act shall be void only as to so much
thereof, as shall not be so expressed."

In English & Scottish American Mortgage and Invest-
ment Company v. Hardy, 93 Tex. 289, 55 S.W. 169, our Supreme
Court said of this provision:

Honorable George H. Sheppard, Page 5.

"The object of the requirement that the sub-
ject of an act should be stated in its title is
simply to direct attention to the subject to be
legislated upon."

Other courts in this State have declared that the
purpose of a caption is to notify all concerned of the scope
of the act, Staples v. Kirby Petroleum Company, 250 S.W.293,
that the title should be sufficient to advise the legislature,
as well as any other reader, of the contents of the act, Booth
v. Board of Education, 70 S. W. (2d) 350 (dismissed), that
the caption should name the purposes of the act, Eldridge v.
Eldridge, 259 S.W. 209, and that a caption must direct atten-
tion to the subject matter of the act, Providence Washington
Insurance Company v. Levy, 189 S.W. 1035, reversed on other
grounds, 222 S.W. 216. Finally, in determining the sufficiency
of a caption our courts have said that any doubts will be
resolved in favor of the validity of the statute. 39 Tex.
Jur. ¶ 36 and cases cited therein.

In State v. Cross, 29 S. E. 527 (W.Va.), an act
by its terms amended and reenacted Section 2 of Chapter
112 of the West Virginia Code and made no mention of Sec-
tion 11 of the same Chapter. The subject matter of the
act was foreign to Section 2 but was closely related to
Section 11. In holding that the act actually amended Sec-
tion 11 and in no way affected Section 2 the Court said:

"As to chapter 49, Acts 1897, it appears
to me to be important to refer to the fact that
it amends and re-enacts section 2 of chapter 112
of the Code, instead of section 11. This misnaming
of the section is clerical error. We look at the
intent of the legislature in a given act as we
do the act of private parties in a deed. We look
at the legislation in this act, and we see plainly
that it relates to section 11 of the Code of 1891,
and has not the faintest reference to the matter
of section 2. We see that the intent was to legis-
late upon the subject of special judges, not upon
the subject of the jurisdiction of circuit courts,
which is the subject of section 2. The legislature
did not intend to wipe out that important section
2. It has merely erred in giving the number of the

section intended to be acted on. That would be false demonstratio, false description, which is always rejected when other matter of the act or deed or other instrument speaks the real purpose. The act affects section 11, not section 2, of chapter 112."

In Lowell v. Washington County Ry. Co., 37 Atl. 869, an act was passed to extend the time for the location and construction of "the Washington County Railroad Company, incorporated under chapter fifty-four of the Private Acts of Eighteen Hundred and Ninety Three". Actually the Railway Company had been incorporated under Chapter 454 of the 1893 Acts. In holding that the error would be disregarded and that the statute would be read as if it actually referred to the correct Chapter the court said:

"It will be noticed that the act of 1895 refers to the original chapter as chapter 54, when it should have been 454. Chapter 54 was an act in regard to larceny. But the act extends the time for the construction of the 'Washington County Railroad Company' incorporated in 1893. The only act of incorporation of the Washington County Railroad Company in that year was by chapter 454. The latter act identifies the railroad, eo nomine; and it would be puerile to hold that, because of the mistaken number of the chapter, the later act did not apply to the original charter of 1893."

Similar corrections have been made with respect to errors occurring in the title of a bill, especially in situations where the title contains correct as well as incorrect references to the subject and object of the act. In such situations the courts in other jurisdictions have held with uniformity that the incorrect portion of the title may be disregarded as surplusage provided the correct portions, standing by themselves, give ample notice of the nature and scope of the act. The following cases, each from a jurisdiction possessing constitutional provisions virtually identical with those in Texas, illustrate

Honorable George H. Sheppard, Page 7

this principle:

In People v. Penman, 110 N.E. 894 (Ill.) the legislature passed a bill entitled "An act to amend section 7 of chapter 37 of an act fixing the terms of holding court in the several judicial circuits of the state of Illinois, exclusive of Cook county, approved June 11, 1897, and in force July 1, 1897." Actually the act in question was not sub-divided into chapters and for this reason the title was attacked as insufficient and misleading. In upholding the sufficiency of the title the court said:

"It is contended that the title to this act purported to amend a part of a chapter which did not exist in the act, and that the act itself did not identify any portion of an existing act and was therefore invalid. The title of the act does not purport to quote the title of the previous act, though it does refer correctly to the act of 1897 by its subject and the date of its approval. It refers to chapter 37 when there is no chapter 37 in the act. The omission of the words 'of chapter 37' leaves a correct reference to the act intended to be amended. The rule for the guidance of courts in such a case is to ascertain the intention of the Legislature, and not its mistakes either as to law or facts. The only question is, has the Legislature expressed its purpose intelligently? If it has, the act is valid and must be upheld. Patton v. People, 229 Ill. 512, 82 N. E. 386; People v. Van Bever, 248 Ill. 136, 93 N. E. 725. In the latter case the amendatory act was entitled "An act to amend the Criminal Code," while the act sought to be amended was entitled "An act to revise the law in relation to criminal jurisprudence," etc., and the amendatory act was sustained. In Otis v. People, 196 Ill. 542, 63 N. E. 1053, the title was,

Honorable George H. Sheppard, Page 8

'An act to amend article 8, section 202,
of an act entitled "an act to establish and
maintain a system of free schools".'

There was no section 202 in the latter act,
that number having been given to section 1 of article
8 of the act to establish and maintain a system of
free schools, in a private publication in general
use throughout the state, known as 'Starr & Curtis'
Annotated Statutes.' The Legislature was evidently
misled thereby to refer to the section as section
202. It was held that the number '202'might be re-
garded as surplusage in determining whether the
amendatory act was in force. So here, the words
'of chapter 37,', which evidently referred to the
chapter in Hurd's Statutes upon the subject of courts,
must be rejected. By so doing the title refers to
section 7 of an act fixing the terms of holding court
in the several judicial circuits, approved June 11,
1897. This fully describes the act by its subject
and the date of its approval, and leaves no doubt
of the intention of the Legislature. The objection
to the statute cannot be sustained."

In State v. Parmenter, 96 Pac. 1047 (Wash.), an
attack was made upon an act entitled "An act amending an
act entitled, 'An act to amend section 3 of chapter 83 of
the laws of 1897 relating to revenue and taxation'". The
error in the caption and its result are thus discussed by
the court:

"If it is necessary to pay strict regard to
everything contained in this title, then it is sing-
ularly involved. Reference to chapter 83, p. 221,
of the Laws of 1897, to which the title refers as the
law amended by this act, discloses that it treats of
monuments and notices upon mining claims. It is mani-
fest that the reference to the former statute is a
pure error, as the two acts relate to subjects en-
tirely separate and distinct. The title does, how-
ever, further state the subject as 'relating to
revenue and taxation,' and the body of the act
clearly and succinctly treats of that subject alone.

Honorable George H. Sheppard, Page 9.

The subject of exemption from taxation treated in the body of the act is included in the general subject specified in the title. We think the erroneous reference to the former statute must be treated as mere surplusage, and, inasmuch as without that part of the title there is a clearly stated and single subject which is followed by a clear treatment of that subject in the act itself, the statute becomes an independent one and has the effect of amending any existing statute upon the subject and of repealing by implication any previously existing provisions in conflict with it. We therefore hold that the act is not invalid by reason of its title."

Perhaps most closely related to the instant question is the situation presented in Wisconsin River Improvement Company v. Pier, 118 N.W. 857 (Wis.). In upholding the sufficiency of the caption of an act entitled "An act to amend chapter 171 of the Private and Local Laws of 1868 entitled 'An Act to incorporate the Wisconsin River Improvement Company and to amend chapter 298 of the Laws of 1876 amendatory thereof'", the court said:

"Chapter 171, p. 343 Priv. & Loc. Laws 1868, is not entitled, 'An act to incorporate the Wisconsin River Improvement Company,' does not relate to that subject at all, but is an act to authorize the town of Springfield, Dane County, Wis., to establish and maintain a high school. Chapter 298, p. 644, of the Laws of 1876, contains in its title the same erroneous references to chapter 171 of the Private and Local Laws of 1868, but also purports to amend chapter 171, p. 313, of the Private and Local Laws of 1866, which last-mentioned act is entitled 'An act to amend chapter 30 of the Private and Local Laws of 1853 entitled, "An act to incorporate the Wisconsin River Improvement Company."' In the body of the last-mentioned act the corporation is, however, described as the Wisconsin River Improvement Company. There was a statute of 1868 amending the charter of the Wisconsin River Improvement Company, but it was chapter 394, p. 925, instead of chapter 171; so, also, there was a statute numbered 171 amending the charter, but it was enacted in 1866 as aforesaid, and not in 1868.

Honorable George H. Sheppard, Page 10.

"It will thus be seen that in the title to
the act of 1880 there is;  First, a false descrip-
tion of chapter 171, Priv. & Loc. Laws 1868;  sec-
ond, a correct description of chapter 298, Laws
1876, which latter contains a false description;
and, third, a correct description of the subject
of the law sought to be amended as, 'An act to
incorporate the Wisconsin River Improvement Com-
pany.'. . . . Assuming, without deciding, that
the act of 1880 is private or local, is the subject
of that act expressed in the title?  The subject of
the act is an amendment to the charter of the Wiscon-
sin River Improvement Company by conferring thereon
the powers aforesaid.  The title expressly declares
that it is to amend a law entitled, "An act to in-
corporate the Wisconsin River Improvement Company,'
but describes the latter statute, which it purports
to amend, incorrectly, by reference to the chapter
number of the act and the year of its passage.
There is in this way a reference in the title of
the act to its subject, but coupled with a false
description.  Two very ancient maxims of the common
law are applicable:  'falsa demonstratio non nocet.'
Broom's Legal Maxims (7th Ed.) 629 marg. et seq.
'Utile Per inutile non vitiatur.'  Id. 627;  Madison,
etc., Co. v. Reynolds, 3 Wis. 287;  26;  A. & E.
Ency. of Law, pp. 579-583.

"Applying another test, it seems to us that
any one reading this title would be at once in-
formed that it expressed the subject of the act,
which is an amendment to an act incorporating
the Wisconsin River Improvement Company and also
an amendment to an amendment of that act.  Upon
further inquiry, he would find that the statute
of 1868 referred to in the title of the act of
1880 was not entitled as described in the title
of the act of 1880;  but the same investiagion
would bring him to chapter 298, Laws 1876, which
would direct him to the original incorporation
act, namely, chapter 30, p. 48, of the Private
and Local Laws of 1853.  Thus he who made no in-
vestigation, but heard the title read, would be

Honorable George H. Sheppard, Page 11.

> informed that the act of 1880 was an act to amend the corporate charter of the Wisconsin River Improvement Company, and he who made full investigation would inevitably ascertain the exact and true condition of the statutes relative to this corporation. Therefore, neither the casual hearer nor the investigator would be misled, and the requirements of the state Constitution are satisfied." (Emphasis added.)

We feel that these cases control our present problem. House Bill 379 contained: (a) An incorrect reference to Article 7076, judging from the dissimilarity in subject matter of the House Bill and the Article; (b) A correct reference to a 1933 Act and a 1939 Act amendatory thereof, judging from the similarity of subject matter; (c) Independent of the references to preceding statutes, a true and full description of the matters treated in the body of the Bill. The situation falls well within the test of the Wisconsin case. He who reads only the title is fully apprised of the actual subject of the bill and is in no way misled by the erroneous reference to Article 7076; he who investigates the acts mentioned will quickly discern the inconsistency in the title and cannot fail to recognize the error therein made. Indeed, the instant situation is stronger than the one presented in the Wisconsin case since House Bill 379 contains two correct references to preceding statutes in addition to a true and full description of the subject matter of the Bill.

One further consideration buttresses this conclusion. Section 36 of Article III of our Constitution provides:

> "No law shall be revived or amended by reference to its title; but in such case the act revived, or the section or sections amended, shall be re-enacted and published at length."

Moreover, when an amended statute, or a portion thereof, is re-enacted and re-published it is settled that the re-enacted law supersedes the original act and that such law alone constitutes an operative part of the jurisprudence

Honorable George H. Sheppard, Page 12.

of this State. 39 Tex. Jur. § 64. It is common knowledge that in most instances these facts make unnecessary a reference to any but the last in a series of amendatory statutes and that it is the usual practice of legislators and lawyers to refer only to such statute. Because of this we feel that no misleading effects can flow from the erroneous reference to Article 7076 since the mention of its two amendments will serve to direct the attention of interested persons only to the latter of these two amendments, and such amendment correctly indicates the subject of the instant Bill.

Consequently, we feel that the reference to Article 7076 should be regarded as surplusage and that House Bill 379 is properly regarded as amending the cited portion of the 1933 Act as such portion was itself later amended by the 1939 Act. It will be noticed that if the reference to Article 7076 is struck out as surplusage, the cited portion of the 1933 Act will remain designated as an amendment whereas in fact it amended nothing and originally constituted new and independent legislation upon the subject of inheritance tax reports. We see no vice in such designation. In Schmalz v. Wooley, 41 Atl. 939 (N.J.) an Act of 1892 was entitled "A further supplement to an act entitled 'An act to protect trade marks and labels." In 1895 a further act was entitled "An act to amend an act entitled 'A further supplement, etc.'" In upholding both of these Acts the court said:

"The question still remains, was the title misleading as to the object of the act? Did not the title, in spite of its false assumption of the existence of a prior statute, fairly express the object of the proposed legislation? On reading the act it will be perceived that its object is to protect trade-marks and labels, and that for this purpose it is a complete and independent enactment. To express that object in the title, no particular form of words is required, nor is it necessary that the object would be expressed with precision. It is enough if the title be so phrased as to inform the legislators and the public of the

Honorable George H. Sheppard, Page 13.

subject-matter of the act. As was said by Mr. Justice Depue in Grover v. Ocean Grove, 45 N. J. Law, 399, 404, "The standard uniformly adopted for determining whether the legislature has complied with the constitutional requirement is whether the title of the act is such that by it the members of the legislature are informed of the subject to which the act relates, and the public notified of the kind of legislation that is being considered.' Bumsted v. Govern, 47 N. J. Law, 368, 1 Atl. 835; on error, 48 N. J. Law, 612, 9 Atl. 577. Tested by this standard, these titles seem to be sufficient. They clearly indicate that the subject of legislation is trade-marks and labels, and that the purpose is to protect them. True, they state that this is to be done in the form of supplements, but that does not affect the object of the statutes. In our legislation a formal supplement to an act is not necessarily a statute which supplies defects in its predecessor. It may be one that abrogates the preceding enactments, and substitutes radically different provisions. Hence the mere calling of an act a supplement to another designated act expresses nothing of its object. Thus, if the title were, 'A supplement to assembly bill No. 10, which became a law on July 4, 1876,' the constitutional requirement would not be satisfied, because the title would not at all express the object, while the title, 'An act to define more accurately the crime of murder of the first degree,' would fully express the object, although the act, in form and substance, were only a supplement to section 68 of the crimes act. Entitling an act a supplement to a former act complies with the constitution only when so much of the original title is recited as expresses the object of the proposed law; and, if that object be expressed, the constitution does not defeat the statute merely because it is erroneously styled a supplement. We therefore conclude that these acts are valid, so far as they are necessary to sustain the complainant's bill."

Honorable George H. Sheppard, Page 14.

Moreover, as in the situation discussed above, the attention of any interested person would be directed not to the 1933 Act but rather to the 1939 Act amendatory thereof.

In accordance with these principles, you are respectfully advised: (a) That House Bill 379 is a valid act notwithstanding the inconsistency in its title; (b) That House Bill 379 in no way affects Article 7076; (c) that House Bill 379 amends the cited portion of the 1933 Act as amended by the 1939 Act.

In arriving at these conclusions we are not unaware of the case of Katz v. State, 54 S.W. (2d) 130 (Cr. App.), but we consider such case to be inapplicable here because the erroneous reference therein involved stood uncorrected by subsequent portions of the act there under consideration.

Trusting that the foregoing fully answers your inquiries, we are

APPROVED AUG 16, 1942

*W Fairchild*

ATTORNEY GENERAL OF TEXAS

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *R. Dean Moorhead*

R. Dean Moorhead
Assistant

RDM:pm



APPROVED
OPINION
COMMITTEE
BY *RW*
CHAIRMAN